held in January, nor any Sunday fixed for it, we cannot say that the plaintiff failed to pay for the month of January until all the Sundays in the month were passed. Provisions for a forfeiture are strictly construed against a forfeiture, and we must conclude that the plaintiff had not forfeited his rights under the by-laws.

The defendant also claims that there were no regular members, for all members had failed to pay since November 5, 1911. There is nothing in the by-laws defining the word "regular." Even if a member fails to pay dues for two consecutive months, and so forfeits his rights under the by-laws, it does not necessarily follow that he is not a regular member for the purpose of being subject to assessment. But, if it does, the same line of reasoning which we have applied to the plaintiff's case leads to the conclusion that none of the members had failed to pay for two consecutive months.

[2, 3] The provision that all cases must first be passed on by the board cannot apply to claims against the society, for that interpretation of the by-law would make the society a judge of its own case. The provision of the by-laws that the money for the benefit "will be drawn from the mortuary assessment fund" was a method of providing the means of payment, and not a condition of liability, as in the case of Wajczeliunas v. St. Peter's Lithuanian Society, 146 App. Div. 574, 131 N. Y. Supp. 150.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

---

(78 Misc. Rep. 646.)

### CLARK v. NEW YORK RYS. CO.

(Supreme Court, Appellate Term, Second Department.   December 20, 1912.)

1. STREET RAILROADS (§ 99*)—INJURY TO PERSON ON OR NEAR TRACK—CONTRIBUTORY NEGLIGENCE OF PERSON INJURED—DRIVER OF AUTOMOBILE.

A chauffeur, driving an automobile in a city street at the rate of 10 miles per hour, so fast that he could not stop between girders in the street and the track, with knowledge of existing conditions and the operation of a surface street railway, was guilty of negligence, precluding a recovery for damages to the machine by collision with a street car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 209–216;  Dec. Dig. § 99.*]

2. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CAUSE—APPELLATE TERM.

Under Code Civ. Proc. § 1317, as amended by Laws 1912, c. 380, which provides for final judgment to be rendered by the Appellate Term, and that when a trial has been before a jury its judgment may be rendered, either upon general findings or the general verdict, or upon motion to dismiss the complaint or to direct a verdict, and that, unless necessary to order a new trial, it shall render final judgment upon the rights of all the parties, the Appellate Term, on concluding that a complaint should have been dismissed, should render final judgment of dismissal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587;  Dec. Dig. § 1175.*]

Appeal from Municipal Court, Borough of Richmond, Second District.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by James G. Clark against the New York Railways Company. From a judgment of the Municipal Court in favor of plaintiff, and from an order denying its motion for a new trial, defendant appeals. Judgment and order reversed, and judgment ordered for defendant.

Argued December term, 1912, before MADDOX, BLACKMAR, and PUTNAM, JJ.

James L. Quackenbush, of New York City (C. Mortimer McGill, of New York City, of counsel), for appellant.

Kindleberger & Robinson, of New York City (E. Crosby Kindleberger, of New York City, of counsel), for respondent.

PER CURIAM. Action to recover for damage to plaintiff's automobile, resulting from a collision between the automobile, then west bound, and a north-bound Lexington avenue trolley car, at the intersection of Eighty-Fourth street. Plaintiff has judgment, and defendant appeals therefrom, and brings up for review also the order denying a motion for a new trial.

The automobile, 6 feet wide, was running at the rate of 10 miles an hour, and hence, as conceded on the trial, covering 14⅔ feet a second. The chauffeur, with knowledge of the existing conditions and the operation of the street surface railway, was approaching a situation of obvious danger, due to the obstructions on the avenue and the street, and the restricted and limited roadway space for vehicular travel, viz., girders, 4 feet 8 inches high, on Lexington avenue, 2 feet beyond the easterly curb, and 8 feet 5 inches easterly from the northbound track, with a space between the girders of 11 feet 3 inches for travel, and on his left a fenced inclosure, 7 feet 4 inches high, on the south side of Eighty-Fourth street and extending into the roadway of that street 13 feet 8 inches from a point 2 feet from said easterly curb of Lexington avenue, and thus preventing a view of the northbound cars until the corner of the fence was reached.

On the trial there was no dispute as to the physical conditions, but a sharp conflict was presented as to whether the car hit the gooseneck or front part of the automobile, or the automobile struck the running board of the car at or near its front platform. There was some question as to the speed of the car and whether a warning bell or gong was sounded.

[1] It was and is the duty of one having charge and operation of a vehicle upon a city street to have the same under reasonable control. That control necessarily varies in degree with the circumstances of each case and the physical conditions and hazards present, the character of the vehicle, the manner of its control, and the time necessary to bring it to a stop, if an exigency fairly to be apprehended should arise. The greater the danger, the higher degree of care required, and the more complete control of the vehicle, since the control called for is such as may bring the vehicle to a prompt stop if occasion so requires. Volosko v. Interurban St. R. R. Co., 190 N. Y. 206, 209, 82 N. E. 1090, 15 L. R. A. (N. S.) 1117. The chauffeur did not have

his automobile under such control. He admitted on the trial that he was going 10 miles an hour, so fast that he could not stop between the girders and the track, and consequently he was, in our opinion, negligent.

[2] At the close of the whole case defendant moved for a dismissal, and also for the direction of a verdict. Section 1317 of the Code, as amended (Laws 1912, c. 380), after providing for a final judgment to be rendered by the Appellate Term, continues:

"When a trial has been before a jury, the judgment of the appellate court must be rendered either upon special findings of the jury or the general verdict or upon a motion to dismiss the complaint or to direct a verdict."

We therefore may render a final judgment upon a motion to dismiss the complaint or to direct a verdict; and as we have concluded that the chauffeur was negligent as matter of law, and that the complaint should have been dismissed at the trial, we should render final judgment upon this appeal, and dismiss the complaint; for section 1317 provides that, except where it may be necessary to order a new trial, the appellate court shall render final judgment upon the right of any or all of the parties according to law. If the justice below had dismissed the complaint, it would have been our duty to affirm upon this record; and it is none the less our duty after verdict to conform to the intent of the Legislature and render a final judgment disposing of this controversy.

Judgment and order reversed, with costs, and judgment ordered for defendant, with costs. All concur.